Filed 8/28/20  Childs v. Dunn CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| DERRICK CHILDS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ALEXIS DUNN,<br><br>        Defendant and Respondent. | A156699, A156775, A156777<br><br>(Alameda County<br>Super. Ct. No. HF18918731) |

The matter before us is a consolidation of three appeals arising from domestic violence restraining order proceedings between Derrick Childs and Alexis Dunn.  Childs appeals four orders from those proceedings:  (1) the trial court's order refusing to set aside Dunn's five-year restraining order against Childs, (2) the trial court's order refusing to set aside the dismissal of his temporary restraining order against Dunn, (3) the trial court's order denying his second restraining order against Dunn, and (4) the trial court's order refusing to hold Dunn in contempt of court.  Childs also argues that Dunn's five-year restraining order is not supported by substantial evidence.  We affirm the judgments.

### FACTUAL AND PROCEDURAL BACKGROUND

Dunn and Childs began a romantic relationship in mid-June of 2018.  Their relationship was short-lived.  On August 29, 2018, Childs requested a

domestic violence restraining order against Dunn. In his request, Childs alleged that on August 28, 2018, Dunn punched and kicked him, stole his phone, and threatened to have her brothers kill him. The court granted a temporary restraining order against Dunn on August 30, 2018 and set a hearing for a permanent restraining order.

After the temporary restraining order issued but before the hearing, Dunn allegedly violated the order by texting and calling Childs on several occasions. She also allegedly attempted to visit Childs at his home on one occasion.

At the hearing to consider Childs' restraining order on September 19, 2020, Dunn indicated she wished to file her own restraining order request against Childs. The court reissued Childs' temporary restraining order against Dunn. Dunn subsequently requested and was granted her own temporary restraining order against Childs. In her request, Dunn alleged Childs had threatened her on multiple occasions and was physically abusive to her on August 1, 2018. A hearing to consider both restraining orders was set.

On September 21, 2018, Childs requested the court hold Dunn in contempt for violating his restraining order. The court denied the request on October 26, 2018. Childs did not appeal this denial until March 12, 2019.

Before the next hearing, Childs was charged with domestic violence battery and making criminal threats based on his conduct towards Dunn in August of 2018. A three-year criminal protective order protecting Dunn from Childs was issued on October 3, 2018. For her part, Dunn was charged with disorderly conduct and willful resistance of an officer, but the charges against Dunn were later dismissed.

At an October 11, 2018 hearing to consider the competing restraining orders, both parties chose not to testify and asserted their Fifth Amendment right against self-incrimination because of the pending criminal charges. The court opted to reissue both temporary restraining orders "to give [Childs and Dunn] sometime to figure out what's going on with the criminal case." The court did not want to force the parties "to pick between exercising your 5th Amendment right to remain silent, and participating in the hearing" on the civil restraining orders. The court set a hearing for December 17, 2018 to consider the requests, and made clear the parties could ask for a further continuance if necessary. Both Childs and Dunn agreed to attend the December 17, 2018 hearing.

Childs did not attend the December 17, 2018 hearing, at which the court granted Dunn a five-year restraining order against Childs. The court based its decision on evidence presented by Dunn, including "a text message in which Mr. Childs makes some reference about a bounty on [Dunn's] head, and a photograph of [Childs] holding a firearm." The court denied Childs's competing request for a permanent restraining order without prejudice, due to his failure to appear. On that same day but after the hearing, Childs arrived at the courtroom and realized what had transpired.

On December 19, 2018, Childs filed a motion pursuant to Code of Civil Procedure section 473, subdivision (b) (section 473(b)) to set aside the restraining order granted to Dunn. Section 473(b) allows a court to set aside a judgment based on a party's mistake, inadvertence, surprise, or excusable neglect. Childs did not raise any other arguments supporting his motion. Childs also filed a request to reinstate his temporary restraining order against Dunn. A hearing to consider Childs' motions was held on January 22, 2019. Childs maintained his failure to attend the December hearing was

a reasonable mistake or excusable neglect under section 473(b), stating he "thought [the court] wasn't going to hear [the restraining order cases] until the criminal case was resolved." The court found Childs's "failure to [attend the December 17 hearing] was [not] a reasonable mistake or excusable neglect" under section 473(b), concluding Childs "had notice . . . [and] due process . . . [but] chose not to come." The court denied "the request to set aside the five-year restraining order that was granted" for Dunn and "decline[d] to exercise its discretion to reinstate [his] Temporary Restraining Order."

On January 23, 2018, Childs requested a new domestic violence restraining order against Dunn. This time the court denied Childs a temporary domestic violence restraining order, and scheduled a hearing to consider whether to grant a permanent restraining order.

A hearing was held on March 7, 2019 to consider Childs's new request for a permanent restraining order. In support of his request, Childs provided phone and text message records between himself and Dunn. In one text exchange, Dunn told Childs she had secretly taken pictures of sexually explicit material on Childs' phone that she thought proved he was "gay . . . or . . . bi," and included the vague but menacing phrase, "[s]o try me." Childs responded saying he had placed a one-thousand-dollar "bounty on [her] head." Childs also presented evidence showing Dunn had messaged one of his ex-girlfriend's and inquired whether Childs was abusive to her. In addition, Childs alleged Dunn violated the original restraining order against her by attempting to contact him in November 2018. Lastly, Childs shared several of the police reports Childs and Dunn had filed against one another. The court found this evidence unconvincing, concluding Childs had "not met his burden by a preponderance of evidence" that Dunn committed an act or

acts of abuse and denying his request for a restraining order. The court considered "credibility determinations made at previous hearings between the two parties" in making its decision. The court also explained that Family Code Section 6305 (section 6305) imposed a special burden before it could impose a mutual restraining order in light of the existing five-year restraining order protecting Dunn from Childs.

Childs timely appealed (1) the trial court's order refusing to set aside Dunn's five-year restraining order against Childs, (2) the trial court's order refusing to set aside the dismissal of his temporary restraining order against Dunn, (3) the trial court's order denying his second restraining order against Dunn. Childs also attempts to appeal the trial court's order refusing to hold Dunn in contempt of court, but, as we will later explain, that appeal is untimely. These appeals were consolidated into the case before us.

## DISCUSSION

Dunn did not file a brief, so, we "decide the appeal on the record, the opening brief, and any oral argument by" Childs and Dunn. (Cal. Rules of Court, rule 8.220(a)(2), references to rules are to Rules of Court; see also *Gou v. Xiao* (2014) 228 Cal.App.4th 812, 817, fn. 3 [court considered only appellant's materials where respondent did not file a responsive brief in domestic violence restraining order case].)

## I.    Domestic Violence Restraining Orders

The Domestic Violence Prevention Act (DVPA) allows a court to issue a restraining order "for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 421; see Fam. Code, § 6300.) The issuance of a restraining order "requires a

5

showing of past abuse by a preponderance of the evidence." (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226 (*Davila & Mejia*).) Under the DVPA, "abuse" includes intentionally or recklessly causing or attempting to cause bodily injury to, attacking, striking, sexually assaulting, stalking, threatening, harassing, making annoying telephone calls to, or disturbing the peace of the other party. (Fam. Code, §§ 6203, 6320; see also *Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 396.) The court may issue an order based solely on the affidavit or testimony of the person requesting the restraining order. (Fam. Code, § 6300.)

A court may issue an ex parte temporary restraining order on a showing of good cause. (Fam. Code, § 6320.) Regardless of whether the court grants or denies a temporary restraining order, the court must set a hearing within 21 or 25 days to consider any restraining order application. (Fam. Code, § 242.) At that hearing, the court has the discretion to issue a restraining order lasting up to five years, which "may be renewed, upon the request of a party, either for five years or permanently." (Fam. Code, § 6345, subd. (a).) A restraining order after hearing is colloquially known as a "permanent" restraining order. (See, e.g., *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1499, 1503.)

The issuance of mutual restraining orders under the DVPA is subject to additional procedural requirements under section 6305. (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 200.) "As used in section 6305, the phrase 'mutual order' may refer to a single order restraining two opposing parties from engaging in the acts of abuse . . . or two separate orders which together accomplish the same result as a single order." (*Melissa G. v. Raymond M.* (2018) 27 Cal.App.5th 360, 368.) A court may not enter "a mutual order" restraining the parties from further acts of abuse unless "[b]oth parties

6

personally appear and each party presents written evidence of abuse or domestic violence" and "[t]he court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (Fam. Code, § 6305, subd. (a)(1), (2).) "[I]n determining if both parties acted primarily as aggressors, the court shall consider the provisions concerning dominant aggressors" set forth in Penal Code Section 836, subdivision (c)(3). (Fam. Code, § 6305, subd. (b).) A "dominant aggressor" is defined as "the person determined to be the most significant, rather than the first, aggressor." (Pen. Code, § 836, subd. (c)(3).)

## II. The trial court did not abuse its discretion in denying relief pursuant to section 473(b)

Childs first argues the trial court abused its discretion in refusing to set aside Dunn's five-year restraining order against him, and in refusing to set aside the dismissal of his temporary restraining order against Dunn. Specifically, Childs contends the trial court abused its discretion in denying him discretionary relief from default under section 473(b). He argues his missing the December 17 hearing amounted to a reasonable mistake or excusable neglect under section 473(b).

Section 473(b) reads, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." " 'It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment. Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business, his motion for

relief under [Code of Civil Procedure] section 473 will be denied.' " (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206 (*Hearn*).)

We review a trial court's denial of relief under this section for abuse of discretion. (See *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495.) "A motion to vacate a default and set aside judgment ([Code Civ. Proc.,] § 473) 'is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse . . . the exercise of that discretion will not be disturbed on appeal.' [Citations.] Moreover, all presumptions will be made in favor of the correctness of the order, and the burden of showing abuse is on the appellant." (*Lint v. Chisholm* (1981) 121 Cal.App.3d 615, 619–620.)

Childs maintains the court "told the parties [the court] would not hear the parties' cases until their criminal matters had been resolved" at the October 11, 2018 hearing. Childs claims he therefore believed the Court would simply continue the restraining orders indefinitely, and he argues he missed the December 17, 2018 hearing because he did not know of its existence. The trial court said no such thing at the October hearing. The court stated it would "trail the civil matter after the criminal case" for a few months so Childs and Dunn did not have to sacrifice their Fifth Amendment rights in pursuing their restraining orders. But the court made clear it would not continue reissuing the restraining orders "forever" because the parties needed "closure," and set a hearing date on the restraining orders for December 17, 2018. Childs replied in the affirmative when the court asked if he could attend the December hearing. In addition, Childs was at the courtroom on December 17, 2018, albeit after the hearing had already concluded.

8

The record supports the notion Childs knew of the December hearing but simply forgot to attend. The trial court found this failure did not rise to the level of a reasonable mistake or excusable neglect under section 473(b). We hold the trial court did not abuse its discretion in making this finding. " 'Reasonable diligence' " requires an individual to attend scheduled judicial proceedings on time, and Childs did not demonstrate such diligence. (*Hearn*, *supra*, 177 Cal.App.4th at p. 1206.) "[T]o require relief in circumstances like these would reward parties who ignore or flout the most basic rules governing civil actions, resulting in delay and congestion of the courts, and would undermine trial courts' ability to conduct proceedings in a way that is fair, efficient and orderly, and serves the interest of *all* litigants." (*McClain v. Kissler* (2019) 39 Cal.App.5th 399, 405.) We therefore conclude the trial court did not abuse its discretion in refusing to set aside Dunn's five-year restraining order against him, or in refusing to set aside the dismissal of his temporary restraining order against Dunn.

## III. The trial court did not abuse its discretion in refusing to issue a mutual restraining order against Dunn

Childs also argues the trial court abused its discretion in refusing to issue a second, mutual restraining order against Dunn at the March 7, 2019 hearing. Specifically, Childs maintains there is substantial evidence that Dunn committed past acts of abuse against him and that she was a primary aggressor in their relationship.

We review an order granting or denying a domestic violence restraining order for abuse of discretion. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1495.) Accordingly, "[w]e resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if

9

it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) "However, '[j]udicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion always resides in the particular law being applied by the court.' " (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264–1265.) And the court must be careful to apply the law even-handedly, recognizing that "the problem of domestic violence affects men as well" as women. (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 507, fn. 18.)

Childs alleges Dunn committed several acts of abuse against him. He alleges Dunn "attacked him and took his cellphone" on the morning of August 29, 2018. He also alleges Dunn "harassed, annoyed, stalked and telephoned" him after the issuance of the temporary restraining order against her on August 29, 2018, and then made a "false accusation of Domestic Violence" against him to the police. In support of these allegations, Childs presented evidence of telephone calls and text messages between himself and Dunn, including communications after the first restraining order was issued. Childs also cites police reports and other court documents.

The trial court found Childs's evidence unconvincing, concluding Childs did not meet his burden of showing evidence of past abuse by a preponderance of the evidence. (See *Davila & Mejia*, *supra*, 29 Cal.App.5th at p. 226.) The court also appeared to question Childs' credibility. We agree the evidence Childs provides is weak. The phone and text records do indicate that Dunn violated the restraining order against her on multiple occasions, but the most abusive of these communications was her text threatening "try me." That phrase is both vague and defensive, suggesting she will retaliate if provoked, but not initiate harm. And even if Childs did show abuse, the

10

evidence does not indicate Dunn was primarily an aggressor, as required for mutual restraining orders under section 6305. (See *J.J. v. M.F.* (2014) 223 Cal.App.4th 968, 975.) In fact, the text message exchanges are substantial evidence that Childs was the more significant aggressor in their relationship. (See Pen. Code, § 836, subd. (c)(3).) In response to Dunn's ambiguous threat about his sexuality, Childs indicated he had placed a bounty on her head. The other evidence presented also fails to establish Dunn was primarily an aggressor. Therefore, the trial court did not abuse its discretion in denying Childs a mutual restraining order against Dunn.

## IV. Substantial evidence supports the restraining Order Protecting Dunn

Childs argues Dunn's five-year restraining order against him is not supported by substantial evidence. Although Childs did not raise this argument in his motion to set aside the restraining order granted to Dunn, we will consider it here. The trial court may issue a permanent restraining order to prevent domestic violence if evidence shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse (Fam. Code, § 6300), and here, substantial evidence supports the trial court's finding that Childs committed such acts. Specifically, text messages where Childs states he had placed a bounty on Dunn's life constitute abuse, as they placed Dunn "in reasonable apprehension of imminent serious bodily injury." (Fam. Code, § 6203, subd. (a)(3).) Therefore, the trial court did not abuse its discretion in granting Dunn a permanent restraining order.

## V. Childs' appeal of the order denying his request to hold Dunn in contempt of court must be dismissed as untimely

"[A] notice of appeal must be filed on or before . . . . [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a

11

document entitled 'Notice of Entry' of judgment." (Rule 8.104(a)(1).) Here, the trial court clerk served on the parties a notice of entry of the order denying Childs's request to hold Dunn in contempt of court on October 26, 2018. Childs identified that order in his notice of appeal filed on March 12, 2019. That date is well more than 60 days after service of the notice of entry of the order being appealed from. Thus, the appeal of that ruling is untimely, and we dismiss it. (Rule 8.104(b).)

## DISPOSITION

The trial court's order refusing to set aside Dunn's five-year restraining order against Childs is affirmed. The trial court's order refusing to set aside the dismissal of Childs' temporary restraining order against Dunn and its order denying Childs' second restraining order against Dunn are also affirmed. Childs' appeal of the trial court's order denying his request to hold Dunn in contempt of court is dismissed as untimely. Dunn is awarded costs on appeal.

_____
TUCHER, J.

WE CONCUR:


_____
POLLAK, P. J.


_____
STREETER, J.